**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

\* \* \*

| | |
|---|---|
| CODY LAVIN,<br><br>Plaintiff,<br><br>v.<br><br>MR. SCARLETT,<br><br>Defendant. | Case No. 3:17-CV-00731-MMD-CLB<br><br>**REPORT AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE[1]**<br><br>[ECF No. 32] |

This case involves a civil rights action filed by Plaintiff Cody Lavin ("Lavin") against Defendant Shane Scarlett ("Scarlett"). Currently pending before the Court is Scarlett's motion for summary judgment. (ECF No. 32.) On December 9, 2025, the Court gave Lavin notice of Scarlett's motion pursuant to the requirements of *Klingele v. Eikenberry*, 849 F.2d 409 (9th Cir. 1988), and *Rand v. Rowland,* 154 F.3d 952 (9th Cir. 1998). (ECF No. 32.) Lavin did not timely file his response, thus the Court *sua sponte* granted Lavin an extension of time to file his response until February 5, 2026. (ECF No. 35.) To date, Lavin has failed to file an opposition to the motion. For the reasons stated below, the Court recommends that the Court grant Scarlett's motion for summary judgment, (ECF No. 32).

I.      **PROCEDURAL HISTORY**

At the time this case was filed, Lavin was an inmate incarcerated in the Nevada Department of Corrections ("NDOC"). (*See* ECF No. 1.) On December 21, 2017, Lavin submitted a civil rights complaint under 42 U.S.C. § 1983 alleging that while he was incarcerated in Nevada, he was victim of excessive force perpetrated by Scarlett. (ECF Nos. 1, 1-1.) Lavin alleges that on June 7, 2017, he was escorted from the infirmary back to his cell in administrative segregation by Scarlett. (ECF No. 1-1 at 3.) As Lavin entered the cell, Lavin alleges that Scarlett shut the cell door and ordered him to place his hands

---

[1]      This Report and Recommendation is made to the Honorable Miranda M. Du, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4.

outside the food hatch so that he could remove Lavin's handcuffs. (*Id*. at 4.) Lavin alleges that he did so, and Scarlett, without justification, grabbed Lavin's left wrist and began twisting and bending his wrist, causing a scar, bruising, and extreme pain. (*Id*.) As a result, Lavin alleges he was taken to the infirmary for medical attention and given pain medication. (*Id*.) Ultimately, the Court screened his complaint pursuant to 28 U.S.C. § 1915(a). (ECF No. 6.) Based on the allegations in the complaint, Lavin was permitted to proceed on a single claim for excessive force in violation of his Eighth Amendment rights against Scarlett. (*See* ECF Nos. 6, 8.)

Thereafter, Lavin failed to follow the Court's order to update his address and to file a new IFP application. (ECF No. 11.) As a result, the Court dismissed this case on December 14, 2019. (ECF No. 12.) Five years later, Lavin filed a motion to reinstate this case, (ECF No. 16), which the Court granted. (ECF No. 18.) Following discovery, Scarlett filed the instant motion for summary judgment. (ECF No. 32.) Lavin failed to oppose or otherwise respond to the motion.

## II.    UNDISPUTED FACTS

On June 7, 2017, Lavin "captured" his wrist restraints after he was escorted from the clinic back to his cell.[2] (ECF No. 32-1 at 4.) Escorting Officers contacted shift command and advised them of the situation. (*Id*.) It was determined that Lavin would remain in restraints until he would voluntarily give them up. (*Id*.) After about five minutes, Lavin agreed to give up the restraints. (*Id*.) When the officers attempted to remove the restraints, they were only able to release one wrist before Lavin attempted to pull the restraints into his cell. (*Id*.) Ultimately, the officers were able to completely remove the restraints by pulling them out of the cell and applying a wrist lock to Lavin. (*Id*.) The restraints were retrieved, but Lavin continued to capture (or hold open) the food slot. (*Id*.)

Part of this incident was captured on video. (ECF No. 33.) The video shows the food slot being open on cell number 47, where Lavin was housed. At approximately 1:02

---

[2]    Capturing his wrist restraints appears to be in reference to Lavin refusing to allow the escorting to remove his restraints after he was returned to his cell. (*See* ECF No. 32-1 at 4, 7.)

timestamp on the video, officers can be seen escorting Lavin up the stairs towards cell 47. (*Id.* at 1:02.) Lavin is wearing wrist restraints. (*Id.*) Lavin enters cell 47 at approximately 1:13, and the officers close the cell door at 1:16. (*Id.* at 1:13-16.) The officers appear to speak with Lavin, and at 1:28, the officers close the food slot. (*Id.* at 1:16-28.) Lavin does not put his hands in the food slot before it is closed. (*Id.*) The officers appear to continue to speak to Lavin before walking away at 1:52. (*Id.* at 1:29-52.) The officers did not remove Lavin's wrist restraints before walking away. (*Id.* at 1:02-52.)

At approximately 6:50, one officer returns to cell 47. (*Id.* at 6:50.) The officer appears to speak with Lavin before opening the food slot at 7:21. (*Id.* at 6:50-7:21.) Lavin then places his hands through the food slot and the officer bends down to remove the restraints. (*Id.* at 7:21-30.) At 7:30, Lavin pulls his hands back from the food slot and is no longer visible. (*Id.* at 7:30.) The officer continues to speak with Lavin before closing the food slot at 8:01. (*Id.* at 7:30-8:01.) The officer walks away at 8:07, and does not have Lavin's wrist restraints. (*Id.* at 8:07.)

Two officers return to cell 47 at 13:57. (*Id.* at 13:57.) One officer stands such that his body is blocking the view of the food slot. (*Id.* at 14:03-21.) When the officer moves out of the way at 14:21, the food slot for cell 47 is open. (*Id.* at 14:21.) Both officers begin pulling Lavin's wrist restraints through the food slot. (*Id.* at 14:22.) It appears that the officer who was blocking the food slot moved in order to aid the other officer, who had been attempting to remove Lavin's wrist restraints. (*Id.* at 14:21-22.) Both officers then pull Lavin's arm through the food slot. (*Id.* at 14:22-27.) While Lavin's arm is in the food slot, both officers attempted to remove the remaining wrist strap. (*Id.* at 14:27-15:39.) At 15:39, one officer steps back from the door, holding what appears to be the chain portion of the wrist restraint. (*Id.* at 15:39.) After the chain is removed, one officer maintains control of Lavin's arm, which remains through the food slot, until 16:32. (*Id.* at 15:39-16:32.) It appears that the wrist portion of the restraint was still on Lavin's wrist at this point. (*Id.*) When the officer steps back from the door, it is clear that Lavin's arm is completely free from restraints. (*Id.* at 16:32.) Lavin keeps his arm through the food slot,

waving his hand around while conversing with the officers. (*Id.* at 16:32-17:55.) The officers walk away at 17:44, and Lavin brings his arm into the cell at 17:56. (*Id.* at 17:44-56.)

After these events, Lavin called a "man down" alleging that his wrist was broken. (ECF No. 32-1 at 11.) A nurse responded and determined that Lavin's wrist was not broken but possibly had soft tissue damage. (*Id*. at 12.) There is no evidence in the record showing Lavin suffered any further medical issues based on this incident.

## III.    LEGAL STANDARDS

Summary judgment is proper where the pleadings, discovery and affidavits show that there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Material facts are those which may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id*.

The moving party for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery and affidavits which demonstrate the absence of a genuine issue of material fact. *Celotex Corp.v. Cattrett*, 477 U.S. 317, 323 (1986). When the moving party has met this burden of production, the nonmoving party must go beyond the pleadings and, by its own affidavits or discovery, set forth specific facts showing that there is a genuine issue for trial. *Id*. If the nonmoving party fails to produce enough evidence to show a genuine issue of material fact, the moving party wins. *Id*.

At summary judgment, the court must view the evidence in the light most favorable to the nonmoving party. *Tolan v. Cotton*, 134 S. Ct. 1861, 1865 (2014). If more than one reasonable inference can be drawn from undisputed facts, the trial court must credit the inference in favor of the nonmoving party. *Hunt v. Cromartie*, 526 U.S. 541, 552 (1999).

Where, as here, a summary judgment is unopposed, a district court may not grant the motion solely on that basis. *Cristobal v. Siegel*, 26 F.3d 1488, 1494-95 & n.4 (9th Cir. 1994). The court may, however, grant an unopposed motion for summary judgment if the

movant's papers are themselves sufficient to support the motion and do not on their face reveal a genuine issue of material fact. *See Carmen v. San Francisco Unified School District*, 237 F.3d 1026, 1029 (9th Cir. 2001).

**IV.     DISCUSSION**

This case is proceeding on a single claim under the Eighth Amendment claim for excess force against Scarlett. (ECF No. 8.) Scarlett argues he is entitled to summary judgment on this claim because the undisputed facts do not support a finding that Scarlett used excessive force in this case. (ECF No. 32 at 6-9.)

The Eighth Amendment's proscription on cruel and unusual punishment forbids prison officials from inflicting "the unnecessary and wanton infliction of pain . . .." *Whitley v. Albers*, 475 U.S. 312, 319 (1986). Encompassed within the Eighth Amendment is a bar on the use of excessive force against prisoners. *See Hudson v. McMillian*, 503 U.S. 1, 7-10 (1992). Courts in the Ninth Circuit apply a five-part balancing test to excessive force claims: (1) the extent of the inmate's injuries; (2) the need for application of force; (3) the relationship between the need and amount of force; (4) the threat reasonably perceived by prison officials; and (5) any efforts that officials utilized to "'temper the severity of a forceful response.'" *Martinez v. Stanford*, 323 F.3d 1178, 1184 (9th Cir. 2003).

The inmate must demonstrate that officials acted maliciously and sadistically to prevail. "[W]henever prison officials stand accused of using excessive physical force in violation of the [Eighth Amendment], the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 6-7. As the Ninth Circuit has explained,

> [t]he "malicious and sadistic" standard arose out of "the need to maintain or restore discipline" inside the prison. When a prison disturbance occurs, prison officials must make "decisions 'in haste, under pressure, and frequently without the luxury of a second chance.'" In these situations, prison officials are "accorded wide-ranging deference" and therefore, prisoners alleging excessive force must show that the force was applied "maliciously and sadistically to cause harm."

*Wood v. Beauclair*, 692 F.3d 1041, 1049-50 (9th Cir. 2012) (quoting *Hudson,* 503 U.S. at 6 and *Whitley,* 475 U.S. at 320). Thus, the Court must be careful when reviewing the

factors to verify indicia of "such wantonness with respect to the unjustified infliction of harm as [is] tantamount to a knowing willingness that it occur." *Hudson*, 503 U.S. at 9. Moreover, there is no need for a showing of serious injury as a result of the force, but the lack of such injury is relevant to the inquiry. *See id.* at 7-9; *Martinez*, 323 F.3d at 1184; *Schwenk v. Hartford*, 204 F.3d 1187, 1196 (9th Cir. 2000).

In the motion for summary judgment, Scarlett asserts that reasonable force was used under the circumstances of this case. (ECF No. 32.) As discussed above, the undisputed facts, uncontradicted by Lavin, are as follows. On June 7, 2017, Lavin "captured" his wrist restraints after he was escorted from the clinic back to his cell. (ECF No. 32-1 at 4.) After about five minutes, Lavin agreed to give up the restraints. (*Id.*) When the officers attempted to remove the restraints, only one wrist was released before Lavin attempted to pull the restraints into his cell. (*Id.*) Ultimately, the officers were able to remove the restraints by pulling Lavin's arm through the food slot and applying a wrist lock. (*Id.*; ECF No. 33 at 13:57-16:32.) The restraints were retrieved, but Lavin continued to capture (or hold open) the food slot. (ECF No. 32-1 at 4; ECF No. 33 at 16:32-17:56.)

Here, based on the undisputed evidence, the *Hudson* factors objectively weigh against finding an Eighth Amendment violation. *Hudson*, 503 U.S. at 6-7. First, the use of force generally was necessary. Lavin's restraints needed to be removed; however, he refused to comply with orders to remove them and captured the restraints. When Lavin finally agreed to the removal of the restraints, he again attempted to pull them back. It was only at this point that the officers grabbed the restraint and pulled Lavin's arm through the food slot to apply the wrist lock in order to remove the restraints.

Second, the amount of force used was proportional to the need. Here, Scarlett used minimal force to hold Lavin's arm to retrieve the restraints and remove them. There is no evidence that Scarlett used other, greater force to accomplish this. Further, the officers stopped using force as soon as the restraints were completely recovered. Thus, the force used was objectively minimal and proportional to the need to gain control of Lavin and recover the restraints. As for the extent of Lavin's injuries, the injuries reported

were minimal, if not de minimis. Medical reported Lavin suffered only minimal redness to his wrist and no severe injury Thus, both the factors of proportionality of force used and the extent of injuries weigh against finding a violation of the Eighth Amendment. *Hudson*, 503 U.S. at 6-7.

Next, the threat Scarlett reasonably perceived was significant. Lavin was refusing to return his restraints, which are metal cuffs and chains which could be used for nefarious or improper purposes if not recovered from Lavin. Finally, Scarlett attempted to temper the severity of his response by giving verbal commands to Lavin before using any hands-on force, however, Lavin refused to comply.

Based on the undisputed evidence before the Court, all five of the relevant *Hudson* factors weigh in favor of finding that Scarlett did not use excessive force. *Hudson*, 503 U.S. at 6-7. There is no dispute as to the minimal amount of force used, the circumstances under which it was applied, and the minimal injuries to Lavin as a result of the minimal force. As such, Scarlett has met his initial burden of establishing there is no genuine issue of material fact as to the merits of the excessive force claim. *Celotex*, 477 U.S. at 323. The burden then shifts to Lavin to oppose the motion and  provide any evidence to create any genuine issue of fact. *Id.* As Lavin failed to oppose the motion entirely, he does not – and cannot – show that Scarlett applied force maliciously and sadistically to cause harm rather than in a good-faith effort to maintain or restore discipline. *Id.*; *Hudson*, 503 U.S. at 6. To the contrary, Scarlett applied a minimal amount of force necessary in a good-faith effort to maintain order, and it was not done maliciously or sadistically to cause harm. *Hudson*, 503 U.S. at 6. Accordingly, the Court recommends Scarlett's motion for summary judgment be granted.[3]

///

///

///

///

---

[3]    Because the Court recommends that the motion for summary judgment be granted in its entirety based on a finding that no constitutional violations occurred, it need not address the argument regarding qualified immunity.

## IV.    CONCLUSION

For good cause appearing and for the reasons stated above, the Court recommends that Scarlett's motion for summary judgment, (ECF No. 32), be granted.

The parties are advised:

1.    Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, the parties may file specific written objections to this Report and Recommendation within fourteen days of receipt. These objections should be entitled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2.    This Report and Recommendation is not an appealable order and any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment.

## V.    RECOMMENDATION

**IT IS THERFORE RECOMMENDED** that Scarlett's motion for summary judgment, (ECF No. 32), be **GRANTED**.

**IT IS FURTHER RECOMMENDED** that the Clerk of Court **ENTER JUDGMENT** accordingly and **CLOSE** this case.

**DATED**: February 26, 2026.

_____
**UNITED STATES MAGISTRATE JUDGE**

8